IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LAURA L. WILSON,

    Plaintiff,

v.

BAYHEALTH MEDICAL CENTER, INC.,

    Defendant.

Civil Action No. 22-1550-RGA

MEMORANDUM OPINION

Gary E. Junge (argued), SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE,

    Attorney for Plaintiff.

Stacy A. Scrivani, Alexis R. Gambale, STEVENS & LEE, P.C., Wilmington, DE; Lisa M. Scidurlo, STEVENS & LEE, P.C., King of Prussia, PA; Michael M. Greenfield (argued), Sasha A. Phillips, STEVENS & LEE, P.C., Philadelphia, PA; Theresa M. Zechman, STEVENS & LEE, P.C., Lancaster, PA,

    Attorneys for Defendant.

January 31, 2024

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant's Motion to Dismiss. (D.I. 14). I have considered the parties' briefing. (D.I. 15, 16, 18). I heard oral argument on January 4, 2024 on a group of cases, including the present action, involving religious discrimination claims with regards to Defendant's COVID-19 vaccine policy. (Hearing Tr.).[1] For the reasons set forth below, this motion is GRANTED in part and DISMISSED as moot in part.

## I. BACKGROUND

This case stems from the COVID-19 pandemic and a healthcare provider's efforts to respond to government vaccination policy. The Amended Complaint (D.I. 8) is the operative complaint and alleges the following facts.

On August 12, 2021, Governor John Carney ordered all Delaware state health care employees either to become vaccinated for the COVID-19 virus by September 30, 2021 or to submit to regular testing for the COVID-19 virus. In November 2021, the Centers for Medicare & Medicaid Services ("CMS") issued a COVID-19 vaccine mandate requiring certain health care facilities, including Defendant, to ensure their staff members were all either vaccinated against COVID-19 or had obtained medical or religious exemptions to taking the vaccine.

Pursuant to Defendant's vaccination policy, employees seeking religious exemption requests were required to submit forms explaining the religious beliefs that formed their basis of their objection to the COVID-19 vaccine. (*See* D.I. 8-1, Ex. A). Employees could attach additional materials, such as letters from religious leaders, to support their exemption request. (*Id.*).

---

[1] Citations to the transcript of the argument are in the format "Hearing Tr. at __."

Employees who had their religious exemption requests rejected, and continued to refuse the COVID-19 vaccine, were terminated on February 28, 2022. Plaintiff was one of these employees. Plaintiff subsequently filed the present suit raising religious discrimination claims against Defendant under Title VII. *See* 42 U.S.C. § 2000e. Defendant moves to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6). (D.I. 14).

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B. Failure to Accommodate

Title VII makes it unlawful for an employer to discriminate against an employee based on that employee's religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII based on a failure to accommodate theory, an employee must show that (1) the employee "held a sincere religious belief that conflicted with a job requirement," (2) the employee "informed their employer of the conflict," and (3) the employee was "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017). "Plaintiffs are not required to establish each element to survive a motion to dismiss; they must simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

A district court's inquiry into whether a plaintiff has plausibly plead the first prong of a prima facie religious discrimination claim is limited to determining whether the belief is (1) "sincerely held" and (2) religious within the plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339 (1970) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

With respect to the first prong of this inquiry, "[w]hether a belief is sincerely held is a question of fact." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672, at *6 (E.D. Pa. Sept. 27, 2021) (citing *Seeger*, 380 U.S. at 185).

With respect to the second prong, determining whether a plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). "[I]t is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. of Maplewood*, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (citing *Fallon*, 877 F.3d at 490). "The notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief. *Africa*, 662 F.2d at 1035. "[T]he very concept of ordered liberty" precludes allowing any individual "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

The Third Circuit has adopted the three *Africa* factors to differentiate between views that are "religious in nature" and those that are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490–91 (quoting *Seeger*, 380 U.S. at 164); *Africa*, 662 F.2d at 1032. A judge must determine whether the beliefs in question (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) "are comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1032) (cleaned up).

The *Africa* court tackled the issue of analyzing non-traditional "religious" beliefs or practices by "look[ing] to familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same

purposes, as unquestioned and accepted 'religions.'" *Africa*, 662 F.2d at 1032 (quoting *Malnak v. Yogi*, 592 F.2d 197, 205 (3d Cir. 1979) (Adams, J., concurring)); *Fallon*, 877 F.3d at 491 (describing the process as considering "how a belief may occupy a place parallel to that filled by God in traditionally religious persons."). The *Africa* factors were adopted as "three 'useful indicia' to determine the existence of a religion" pursuant to this "definition by analogy" approach. *Africa*, 662 F.2d at 1032. Their applicability to a person who professes a more widely recognized, "traditional" religion is a little less obvious.[2] However, because individuals cannot "cloak" all personal beliefs "with religious significance," a court must still scrutinize whether a sincerely held belief, asserted by someone claiming a recognized religion, is sufficiently connected to their religion. *Id.* at 1035; *see Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023) ("[T]he issue in this case is not whether plaintiff has asserted a plausible claim that she has a personal religious faith. . . . Plaintiff does not claim that she has suffered unlawful discrimination because she believes in God. Rather, she claims that she has suffered unlawful discrimination because she was required to comply with the COVID-19 vaccination requirement. The critical question, therefore, is whether the complaint alleges sufficient plausible facts from which it could be reasonably inferred that being vaccinated against COVID-19 violates a tenet or principle of her religious belief.").

Of course, individuals may have religious beliefs which are not widely accepted within their religion. *See Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 708 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or

---

[2] Plaintiff follows a recognized religion that already meets the three *Africa* factors. (*See* D.I. 8 ¶ 13).

6

the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee."). Beliefs of this nature would, logically, fail to be sufficiently linked to the individual's claimed religion and need to satisfy the *Africa* standard to qualify as religious beliefs.

### C. Disparate Treatment

To establish a prima facie case of religious discrimination under Title VII based on a disparate treatment theory, an employee must show that (1) the employee is "a member of a protected class," (2) the employee "suffered an adverse employment action," and (3) "nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001). Depending on whether the plaintiff proceeds under a pretext or mixed-motive theory, they must ultimately prove that their protected status was either a "motivating" or a "determinative" factor in the employer's challenged action. *Connelly*, 809 F.3d at 787–88.

## III. DISCUSSION

### A. Failure to Accommodate

At this stage of the case, only one issue exists—whether Plaintiff has sufficiently pled that the belief upon which her objection to receiving the COVID-19 vaccine was based is a religious belief. "[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts regarding the nature of her belief system, as well as facts connecting her objection to that belief system." *Aliano*, 2023 WL 4398493, at *5. "In other words, she must demonstrate that her objection arises from a subjective belief that is tied to her belief system which meets the *Africa* factors." *Id.* (citing *Africa*, 662 F.2d at 1032; *Fallon*, 877 F.2d at 492–93 (concluding that the

7

plaintiff's "anti-vaccination beliefs are not religious" but providing "[t]his is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are protected")); *see also Brown v. Child.'s Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) ("[I]t is not sufficient merely to hold a 'sincere opposition to vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious belief.'" (quoting *Fallon*, 877 F.3d at 490)); *Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023); *Ellison v. Inova Health Care Servs.*, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023) (A plaintiff should "provide[] sufficient allegations regarding [their] subjective personal beliefs, how those beliefs are related to [their] faith, and how those beliefs form the basis of [their] objection to the COVID-19 vaccination."). Defendant argues that Plaintiff's objection to the vaccine stems from Plaintiff's personal moral code rather than from her religious beliefs.[3] (D.I. 15 at 7–16; D.I. 18 at 5–8).

Plaintiff identifies two categories of beliefs that she argues qualify as religious beliefs. (*See* D.I. 21 at 5 (placing Plaintiff under the "Fetal Stem Cell Argument" and "Cannot change God Given Immune System/Healing Power rests with God" categories)). For the following reasons, I find Plaintiff has failed to adequately plead facts that show any of these categories are religious beliefs that form the basis of her objection to the COVID-19 vaccine.

---

[3] Defendant does not challenge Plaintiff's assertion that her religious faith of non-denominational Christianity meets the *Africa* test. Rather, Defendant argues the beliefs on which Plaintiff's objection to the vaccine is based are secular beliefs based on Plaintiff's personal moral code, as opposed to religious beliefs that form a part of Plaintiff's Christian faith. (*See* D.I. 15 at 7–16; D.I. 18 at 5–8). I therefore address only the questions at issue; whether Plaintiff has sufficiently connected her objection to the vaccine to a religious belief tied to her Christian faith or whether the beliefs that form the basis of Plaintiff's objection would otherwise satisfy the *Africa* standard.

### 1. "God-given Immune System" Belief

Plaintiff's exemption form states, "[T]he Holy Spirit has convicted me and I will no longer defile my body or seek to modify or alter God's beautiful design of my immune system." (D.I. 8-1, Ex. A, at 4 of 5). Plaintiff, however, fails to explain why her religious beliefs would condemn "altering" her immune system. Plaintiff also does not provide information on how the COVID-19 vaccine would "alter" her immune system according to Plaintiff's allegations.

Plaintiff's religious belief instead appears to be based on her faith in her immune system, which was designed by God, to fight off the COVID-19 virus. (*Id.* at 4 of 5 ("I believe immunizations should be an individual[']s choice and by making it mandatory to receive a vaccine [I] would be losing my right to choose what I decide is best for me and the faith that I have in Jesus as my healer and on His word and promises on which I faithfully follow.")). The letter submitted by Plaintiff's pastor supports this interpretation. (*See* D.I. 8-2, Ex. B, at 2 of 3 ("Our faith is what protects us and guides us from illnesses and famine that occur within the world."); *id.* ("In this case, the individual is choosing to exercise their faith and trust in Jesus to protect them from illness."); *id.* ("This individual chooses not to get the vaccine based on their beliefs, feeling confident that their health his well enough to fight infection, without being vaccinated."); *id.* ("The choice to not become vaccinated is this individual putting faith into the scripture that Jesus will protect them from the enemy, in this case, the Covid-19 virus.")).

It is clear, even from the quotations already cited from Plaintiff's exemption request submission, that the connection between Plaintiff's faith in her "God-given immune system" and her objection to the vaccine relies on her belief that "immunizations should be an individual[']s choice." (D.I. 8-1, Ex. A, at 4 of 5). This reliance is made apparent by her pastor's explanation that there is no teaching that prohibits Plaintiff from receiving the vaccine if she so desires. (*See*

9

D.I. 8-2, Ex. B, at 2 of 3 ("Each Christian has their own personal reasons for choosing to receive or not receive the Covid-19 vaccine. Those who choose to receive the vaccine are not being defiant in their religion or not trusting Jesus, they are only choosing what they feel is right for them and their personal lives.")). Plaintiff's pastor instead focuses on the idea that Plaintiff is entitled to make her own decision about whether to receive the vaccine. (*See id.* ("As a Christian, the believer is deciding to exercise their right to choose what is beneficial to their bodies."); *id.* ("By making it mandatory for someone to receive a vaccine, they are losing their right to choose what is preferable to them, their faith and the word of God."); *id.* at 3 of 3 ("[W]e should be able to express our right not to participate in the vaccine.")). He asserts, "By injecting things into our bodies that we do not wish to have, this would be ignoring His word." (D.I. 8-2, Ex. B, at 2 of 3). "Plaintiff's belief that she is forbidden from doing something Plaintiff herself deems 'unwanted' is, absent further pleading regarding the religious nature of the belief, akin to asserting 'a blanket privilege.'" *Blackwell v. Lehigh Valley Health Network*, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023). Allowing Plaintiff this type of "God given right to make [her] own choices," *Finkbeiner*, 623 F. Supp. 3d at 465, would enable Plaintiff to "make [her] own standards on matters of conduct in which society as a whole has important interests." *Africa*, 662 F.2d at 1031 (citing *Yoder*, 406 U.S. at 215–16). "[T]he very concept of ordered liberty" precludes this result. *Africa*, 662 F.2d at 1031.

Plaintiff's assertions that "I pray over all of my medical procedures," and that "[i]t is through His counsel that my decisions are based on," do not save her claim. (D.I. 8-1, Ex. A, at 3 of 5). Allowing Plaintiff the ability to object to anything based on God's instructions would again amount to the type of "blanket privilege" that does not qualify as religious belief under *Africa. Ellison*, 2023 WL 6038016, at *5. Several other district courts handling similar religious

10

discrimination cases involving the COVID-19 vaccine have similarly found such beliefs to amount to "blanket privileges" that do not qualify as religious beliefs. *See, e.g., Lucky v. Landmark Med. of Mich., P.C.*, 2023 WL 7095085, at *4–7 (E.D. Mich. Oct. 26, 2023); *Ellison*, 2023 WL 6038016, at *5; *Ulrich v. Lancaster Gen. Health*, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023); *Blackwell*, 2023 WL 362392, at *8; *Finkbeiner*, 623 F. Supp. 3d at 465.

Plaintiff's counsel argued that whether a belief amounted to a "blanket privilege" presents an issue of sincerity that should be reserved for a jury. (Hearing Tr. at 33:3–14). The *Africa* court, however, indicated that a principal reason that courts engaged in the practice of making "uneasy differentiations" between religious and nonreligious beliefs was to prevent any individual from retaining a "blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *See Africa*, 662 F.2d at 1031. I find it proper to consider this question when dealing with religiosity. As noted above, other district courts have likewise examined the "blanket privilege" question at the motion to dismiss stage.

### 2. "Fetal Stem Cells" Belief

Plaintiff's exemption form asserts that the COVID-19 vaccines are "produced and/or tested with cell lines that originated from an aborted fetus" and that she "cannot in good faith or conscience put a vaccine in [her] body that has been tested or contains human fetal cells." (D.I. 8-1, Ex. A, at 4 of 5). She states, "I am pro-life and my religious faith does not believe in abortion or putting anything in my body that has been derived from or tested from healthy aborted human cells and tissue." (*Id.*)

Aside from a single conclusory statement that declares her religion is against abortion, Plaintiff's provides no information explaining how her aversion to abortion is based on her religious beliefs. "That conclusory statement fails to provide a sufficient connection between

11

[Plaintiff's] objection to the COVID-19 vaccines . . . and her subjective religious beliefs." *Ellison*, 2023 WL 6038016, at *7; *see id.* (finding the statement "[Plaintiff] also has religious objections to abortion, and to receiving vaccines that were test[ed] or produced using materials derived from abortion" conclusory and insufficient to tie Plaintiff's religious beliefs to her objection to the COVID-19 vaccine); *Aliano*, 2023 WL 4398493, at *10 ("'[Plaintiff's] exemption request states only that he is 'a baptized Roman Catholic, and due to my Catholic beliefs, I am requesting exemption from the COVID-19 vaccine' and that 'using aborted fetal cells and/or aborted fetal cell lines are in direct conflict with my religious beliefs.' . . . These conclusory statements fail to provide sufficient connection between [Plaintiff's] objection to the COVID-19 vaccines . . . and his subjective religious beliefs.").

For the reasons stated above, I find Plaintiff's Complaint does not plausibly allege that Plaintiff's objection to receiving the COVID-19 vaccine was based on a sincerely held religious belief. At oral argument, Plaintiff's counsel agreed that, in the event that I found a plaintiff had not adequately pled a religious belief, dismissal with prejudice was the proper path forward. (Hearing Tr. at 65:1–9). Plaintiff's counsel caveated his concession by arguing there were some cases where "the Plaintiff should have been given a chance to flesh out their opinion" because they asked for, and did not receive, the opportunity to appeal Defendant's decision to deny their accommodation request. (*Id.* at 65:8–19).

The question before me, however, is not whether the law required Defendant's accommodation request procedure to include an appeals process. "The motion to dismiss attacks what was pled in the complaint, not whether [Plaintiff] could or would have provided more information about her alleged religious objection to the vaccine" in her exemption request. *Lucky*, 2023 WL 7095085, at *8. "Put differently: the instant motion to dismiss is addressed to

the first element of a religious discrimination claim: whether [Plaintiff] had a sincerely held religious belief that conflicted with an employment requirement." *Id.* "What she told her . . . employer goes to the second element of the claim, whether she informed the employer about the conflict." *Id.*

I nevertheless believe Plaintiff may be able to successfully plead a sincerely held religious belief if given the opportunity to amend her Complaint. I will therefore dismiss Plaintiff's failure to accommodate claim without prejudice.

### B. Disparate Treatment

Defendant argues that Plaintiff has failed to sufficiently plead a religious discrimination claim under Title VII based on disparate treatment. (D.I. 15 at 16). Plaintiff states that she has not yet pled disparate treatment. (D.I. 16 at 20). I agree with Defendant that Plaintiff's assertion of "differential treatment" presents some confusion about whether a disparate treatment claim has been raised. (D.I. 18 at 10 n. 28). Nevertheless, since Plaintiff states she is not now pleading disparate treatment, I accept that she is not, and I will dismiss Defendant's argument as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 14) is GRANTED in part and DISMISSED as moot in part.

An appropriate order will issue.

13